UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE D. KORN,

      Plaintiff,

v.                                     Case No. 04-CV-70821

THE PAUL REVERE LIFE INSURANCE
COMPANY,

      Defendant.
                                     /

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT, (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) DENYING PLAINTIFF'S MOTIONS IN LIMINE**

Pending before the court are Plaintiff's motion to amend the complaint, his two motions in limine, and Defendant's motion for summary judgment. The parties have filed appropriate responses to all of the motions, and the court concludes that a hearing is unnecessary to their resolution. E.D. Mich. LR 7.1(e). For the reasons stated below, the court will deny Plaintiff's motion to amend the complaint, grant Defendant's motion for summary judgment, and deny Plaintiff's motions in limine.

## I. BACKGROUND

Plaintiff Korn entered into a disability insurance contract (Policy No. 2339562) with Defendant The Paul Revere Life Insurance Company on July 1, 1988. (Pl.'s Compl. at ¶ 5.) Pursuant to his disability insurance policy, Korn was to receive disability benefits of $20,000.00 per month plus cost of living increases should he become disabled from the practice of law. (*Id.* at ¶ 7.)

Plaintiff filed a complaint in this matter on May 9, 2003 but on June 30, 2003, agreed to a voluntary dismissal of his claim. (Pl.'s 11/19/08 Resp. at 1.) Plaintiff filed suit again on February 12, 2004, bringing a claim against Defendant for breach of contract, and seeking declaratory action and specific performance of the insurance contract at issue. (Pl.'s Compl. at ¶¶ 14-28.) Plaintiff asserts that benefits were to be paid monthly and continue until Plaintiff's death, so long as he remained disabled. (*Id.* at ¶ 11.) Plaintiff claims that since he "became totally disabled from his attorney practice," he "has been continuously treated by accredited psychiatrists" and "[e]ach of Plaintiff's treating physicians have found [Plaintiff] unable to practice as an attorney due to his illnesses." (*Id.* at ¶ 7.) As such, Plaintiff asserts that he is "entitled to disability benefits based on his inability to engage in his occupation commencing May 1, 2008," for which he submitted a claim to Defendant on October 14, 2000. (Pl.'s 11/19/08 Resp. at 1.) Plaintiff further states that he "timely notified Defendant of [his] disability and provided Defendant with all required proofs of loss pursuant to the policy['s] terms and conditions." (Pl.'s Compl. at ¶ 8.) Plaintiff avers that "Paul Revere breached its obligations under the policy by wrongfully and without justification failing to pay Korn $20,000 per month beginning September 2000." (*Id.* at ¶ 16.)

On November 15, 2004, Defendant filed its "Motion to Dismiss Under Statute of Limitations." The insurance policy states in relevant part:

9.4 WRITTEN PROOF OF LOSS

Written proof of loss must be sent to us within 90 days after the end of a period for which you are claiming benefits. If that is not reasonably possible, your claim will not be affected, but, unless you are legally incapacitated, written proof must be given within one year.

2

> 10.4 LEGAL ACTION
>
> You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3 years from the date written proof of loss is required.

(Def.'s 11/15/04 Mot. at Ex. A, pp. 16-17.)

At the January 20, 2005 hearing held in this matter, both parties agreed that the case turns on whether the period for filing proof of loss arose within ninety days of Plaintiff's disability or will not arise until Plaintiff's disability ends or Plaintiff's death. Defendant argued that "Plaintiff's assertion that he is not required to submit proof of loss until after his entire period of disability ends . . . is contrary to both the Paul Revere Policy and his own Complaint." (Def.'s 12/17/04 Reply Br. at 1.) Defendant asserted that:

> [t]he Paul Revere [p]olicy unambiguously requires that written proof of loss be submitted as a condition **precedent** to getting benefits, and proof of loss must be submitted within 90 days of each 30 day period for which benefits are claimed. It says '[w]ritten proof of loss must be sent to us within 90 days after **a** period for which you are claiming benefits,' and '**[a]fter** we receive satisfactory written proof of loss, . . . we will pay at the end of each 30 days any benefits due that are payable periodically - subject to **continued** proof of loss.' . . . Thus, an insured must provide proof of loss **before** initially receiving benefits, and must provide continuing proof of loss within 90 days of each subsequent 30 day period for which benefits are sought. These unambiguous requirements preclude Plaintiff's argument that proof of loss is not required until after an insured's disability ends.

(*Id.*) (emphases in original.)

In his response to Defendant's motion to dismiss, Plaintiff asserted that "written proof of loss is not required to be given to Defendant Paul Revere until 90 days after the period for which disability benefits are being claimed. Because Plaintiff contends that

3

his disability is permanent and continuing, this period has not ended, and the contractual limitation period has no application in these circumstances." (Pl.'s 12/06/04 Resp. at 3.)

This court relied upon *Selesny v. U.S. Life Ins. Co.*, No. 236141, 2003 WL 1861028 (Mich. Ct. App. April 8, 2003), an unpublished case issued by the Michigan Court of Appeals, which considered policy language almost identical to that in the instant case. In *Selesny*, the policy at issue read as follows:

> Written proof of loss for benefits must be given within 90 days after the termination of a period for which United States Life is liable. For all other losses, written proof of loss must be given within 90 days after the date of loss. If it is not reasonably possible to give written proof in the time required, United States Life will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless the insured person lacked legal capacity.

*Id.* at *1. The plaintiff in *Selesny* filed a complaint alleging the following:

> While licensed to practice law in Michigan, [plaintiff] purchased two disability insurance policies from [United States Life ("U.S. Life")] using the Paul Goebel Group ("Goebel") as an agent. [Plaintiff] accidentally fell from the roof of his home on July 25, 1993, and suffered several injuries that confined him to a wheelchair. . . . The injuries and illnesses resulting from the fall became so severe that he 'became totally disabled from the practice of law in July 1998.

*Id.* The plaintiff in *Selesny* asserted that "[he] ha[d a] continuing disability and thus, there ha[d] been no termination of a period for which U.S. Life is liable." *Id.* The Michigan Court of Appeals held that "under 'a fair reading of the entire contract of insurance,' the above provisions, 'however unartfully worded or clumsily arranged, fairly admit of but one interpretation.'" *Id.* at *5. "Indeed, the provisions, read together, make clear that an insured must submit a proof of loss within ninety days after a monthly period for which U.S. Life is liable." *Id.* The court rejected the plaintiff's contention that

4

the "'period for which United States Life is liable under the 'Proof of Loss' provision is the entire period of disability.'" *Id*. The *Selesny* court went on to state that:

> to accept plaintiff's interpretation – that an insured seeking monthly benefits payments need not submit a proof of loss until ninety days after the complete elimination of the disability – would essentially render nugatory the provision stating that '[p]ayment for losses that are paid periodically will be made each month subject to due written proof of loss.' As noted in *Associated Truck Lines, Inc v. Baer*, 346 Mich. 106, 110; 77 N.W.2d 384 (1956), courts should, if possible, give meaning to every word in a contract. The contractual provisions as a whole make clear that a proof of loss is to be submitted within ninety days after the month for which periodic benefits are sought.

*Id.* at *6.

Other courts, this court noted, have affirmed dismissal of a plaintiff's complaint based upon the limitation period stated within a contract. *Tom Thomas Org., Inc. v. Reliance Ins. Co.,* 242 N.W.2d 396 (Mich. 1976), *overruled on other grounds by Rory v. Cont'l Ins. Co.*, 473 Mich. 457 (Mich. 2005)*; Gibson v. Life Ins. Co. of North America,* 529 F. Supp. 224 (E.D. Mich. 1981)*; Robertson v. Metro. Life Ins. Co.,* 682 F. Supp. 907, 909 (E.D. Mich. 1988); *Wilkins v. Hartford Life and Acc. Ins. Co.*, 299 F.3d 945 (8th Cir. 2002).

In his complaint, Plaintiff alleges that "Paul Revere breached its obligations under the policy by wrongfully and without justification failing to pay Korn $20,000 per month *beginning September 2000*." (Pl.'s Compl. at ¶ 16) (emphasis added). Based on that, the court found that Plaintiff's proof of loss was required to have been submitted not later than December of 2000 – ninety days from the end of the first thirty day period for which benefits were sought. (02/28/05 Order at 10.) Plaintiff argued unavailingly that it would make "no sense" to require regular submissions of proof of loss to the insurer, but the court found nothing unusual at all. (*Id.*) The court noted that any insurance

company would have a strong interest in confirming that the allegedly disabled party to whom it is paying benefits is truly, and continually, disabled. (*Id.*)

Indeed, the court found that the stranger result would be if Plaintiff would not have to submit any proof of his loss until his purported disability had completely abated or after he died. (*Id.*) Moreover, the court noted that to accept that an insured not submit proof of loss until ninety days after the end of his disability or his death (whichever occurred first) is inconsistent with Plaintiff's assertion that he has "provided Paul Revere with all required proofs of loss pursuant to the policy terms and conditions." (*Id.* at 10-11; Pl.'s Compl. at ¶ 8.) Therefore, the court, in ruling on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), construed the complaint in a light most favorable to Plaintiff, accepted all the factual allegations as true, and determined that Plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). The court accepted Defendant's argument that "because Plaintiff did not commence the present action until February 12, 2004, or five months after the limitation period expired, Plaintiff's Complaint is untimely and it must be dismissed." (Def.'s 11/15/04 Mot. at 2.) The court agreed that "the policy [at issue] contains its own limitations period for legal actions, providing that an action cannot be brought 'after 3 years from the date written proof of loss is required' under the policy. Written proof of loss is required within 90 days of when an insured claims to be disabled." (*Id.*) Because Plaintiff did not bring his suit until February 2004, the court found his claim was time-barred. (02/28/05 Order at 11.)     Following a timely appeal

by Plaintiff, the Sixth Circuit Court of Appeals affirmed in part and reversed in part this court's dismissal of Plaintiff's suit. Specifically, the Court of Appeals found that the contractual three-limitations period bars a claim for benefits for any month prior to November of 2000. *Korn v. Paul Revere Life Ins. Co.*, 238 F.App'x 109, 111 (6th Cir. 2007). The Court of Appeals further held that while claims for September and October of 2000 were therefore properly dismissed, the necessity of considering evidence beyond the face of the complaint made a Federal Rule of Civil Procedure 12(b)(6) dismissal of claims, for November of 2000 or later, improper. *Id.* at 112. Finally, the Court of Appeals agreed with this court that "if [Plaintiff] failed to submit proof of loss within 90 days of any other period . . . then the court may find that he is entitled to no benefits." *Id.* The court then remanded the matter to this court for further proceedings. *Id.*

Upon remand, this court resolved an initial question in holding that the insurance policy in question was not governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq ("ERISA"), but rather was governed by state contract law. (02/26/08 Order at 5.) Soon after, the court issued a scheduling order providing the pertinent dates for amendments, the close of discovery, and the filing of dispositive motions.[1] On October 30, 2008, Plaintiff filed two motions in limine. In the first, Plaintiff argued that any reference to the amount of a potential monthly benefit from the

---

[1] The court ordered that "[a]ny motion to amend the complaint . . . if based on newly discovered information, [must] be made promptly after receipt of the information upon which the proposed amendment is based." (04/23/08 Order at 1-2.) The court also set September 30, 2008 as the deadline for completing court-supervised discovery, (*id.* at 2), and October 30, 2008, as the deadline for "filing pretrial motions requiring extensive briefing and consideration (including motions under Rule 56 . . . )" (*Id.* at 4.)

insurance policy "is not relevant and may well be prejudicial for the jury . . . ." (Pl.'s 10/30/08 Mot., Dkt. # 61, at 1.) Plaintiff's second motion in limine seeks to disallow any testimony from one of Defendant's expert witnesses, and seeks to limit the testimony of another expert to his area of expertise. (Pl.'s 10/30/08 Mot., Dkt. # 63, at 2.) On the same day, Defendant filed a motion for summary judgment, arguing that Plaintiff never filed the contractually required proof of loss documents and that Plaintiff's claim is now time-barred by the policy's three-year limitations period. (Def.'s 10/30/08 Mot. at 15-16.) Finally, on November 13, 2008 – forty-four days after the close of discovery and fourteen days after the deadline for "pretrial motions requiring extensive briefing and consideration," (04/23/08 Order at 4) – Plaintiff filed a motion to amend the complaint. Plaintiff's motion to amend seeks to add a breach of contract claim, based on a regulatory settlement agreement ("RSA") entered into in November of 2004, between Defendant, the United States Department of Labor, and Insurance Regulators and Commissioners of all of the fifty states. (Pl.'s 11/13/08 Mot., Ex. A at 5.)

## II.  DISCUSSION

### A.  Motion to Amend

At this late stage in the litigation "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a) ("Rule 15"). Thus, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant . . ., undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation

omitted). Rule 15 works in conjunction with Fed. R. Civ. P. 16(b), however, which requires the court to limit the time "to join other parties and to amend the pleadings." Fed. R. Civ. P. 16(b)(1) ("Rule 16"). In combination, Rules 15 and 16 are designed to "ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes). Rule 16 does provide some allowance for amending the pleadings after a deadline imposed by the court, in the form of a modification of the scheduling order, but only with "a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b).

To deny a motion to amend the pleadings, the court "must find 'at least some significant showing of prejudice to the opponent.'" *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). Such significant prejudice can exist where a motion to amend is filed after the close of discovery, unless there is good cause for the delay. *Duggins*, 195 F.3d at 828 (collecting cases). The prejudice may be particularly evident where the deadlines for discovery and dispositive motions have passed and a motion for summary judgment has already been filed. *Id.* ("Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from [the original claim] that was before the court.").

Plaintiff's tardy motion to amend the complaint must be denied. Plaintiff seeks to amend his complaint to include a claim that Defendant violated the terms of the 2004 RSA reached between Defendant, the Department of Labor, and various state

regulatory agencies.  (Pl.'s 11/13/08 Mot. at 1-2.)  The motion to amend arrives four years after the original complaint was filed, and perhaps more importantly, four years after the RSA was issued.  Further, Plaintiff's motion to amend was filed forty-four days after the close of discovery and fourteen days after the deadline for filing pretrial motions requiring extensive briefing and consideration.  Plaintiff's motion was also filed fourteen days after Defendant filed its motion for summary judgment.  But beyond the substantial delay, the court agrees with Defendant that, at a minimum, adding the additional claim would require identification of new witnesses, supplementing existing and taking new depositions, and other new discovery, over a month after court-supervised discovery has closed.  If the court were to allow the amendment, Defendant would face significant prejudice in defending a claim without the benefit of court-supervised discovery.  To prevent this significant prejudice, the court would need to alter the scheduling order to accommodate additional discovery and possible dispositive motions.  At this late stage in the litigation, Plaintiff must therefore show good cause to justify the alteration of the scheduling order.  Fed. R. Civ. P. 16(b).

Plaintiff does not contend, nor would it be supportable, that the RSA's existence was non-public since its issuance in November of 2004.  The existence of the RSA was therefore discoverable at some point before the close of discovery on September 30, 2008.  Defendant provides a letter, sent to Plaintiff's counsel at least six weeks before the close of discovery, which included the RSA as an attachment.  (Def.'s 12/01/08 Resp., Ex. 1.)[2]  Indeed, Plaintiff's own motion, in attempting to argue that he was

---

[2] Shortly after receiving the letter, Plaintiff contended that the RSA provided by Defendant was not the correct version of the RSA.  (Pl.'s Reply, Ex. A.)  But realizing

unaware of the RSA's importance prior to October 3, 2008, concedes the point. Plaintiff claims he could not have raised the request for amendment prior to October 3, 2008, because on that date he took the deposition of Natasha Farland, who "confirmed that Plaintiff was within the definition of [one covered under the RSA.]" (Pl.'s 11/13/08 Mot. at 2.) But the questions Plaintiff asked Farland during the deposition make clear Plaintiff knew the RSA existed and was only attempting to gain an admission that Plaintiff was covered under its provisions.[3] To ask questions about the RSA on October 3, 2008, Plaintiff needed to know of its existence beforehand. Plaintiff need not have waited until one of Defendant's's employees "confirmed" Plaintiff was covered under the RSA to recognize its potential significance to this litigation.[4] He offers no other explanation for the failure to bring his motion to amend, purely on the basis of an added

---

that the RSA he received was not the correct RSA requires Plaintiff to know that there was a more applicable RSA still in Defendant's possession. This knowledge belies Plaintiff's argument that he could not realize the RSA's significance until October 3, 2008.

[3] Contrary to Plaintiff's contention, Farland's deposition far from confirms that Plaintiff is even covered by the RSA. For example "Q. Well, let me do it this way. Do you know whether [Plaintiff] was eligible for the reassessment program? A. I do not know." (Pl.'s 11/19/08 Mot., Ex. D at 171); "A. Again, I don't know any of the details about the reassessment or what was looked at for the cases that were reviewed. I didn't . . . take part in it." (*Id.* at 174); "I don't know what they were reassessing. I know they were reviewing cases, but I did not participate with the unit and can't speak to it." (*Id.* at 174-75.)

[4] Plaintiff, without any reference to a position taken by Defendant or its employees, contends that "[u]nder the definition contained in the Claims Reassessment Process, Plaintiff Korn was clearly among the Specified Claimants." (Pl.'s 11/19/08 Resp. at 2.) It is apparent that Plaintiff understood the RSA's definition and its possible impact on his own position, regardless of Defendant's employee's ambiguous deposition answers.

claim for breach of the RSA, prior to the close of discovery.[5] Therefore, the court finds that "[a]llowing amendment at this late stage in the litigation would create significant prejudice to the defendant[] in having to reopen discovery and prepare a defense" based on the RSA, in light of the original claims based purely on an individual insurance policy. *Duggins*, 195 F.3d at 828. Because Plaintiff can show no good cause why the motion to amend could not have been brought prior to the close of discovery, and in light of the passed deadlines and pending motion for summary judgment, the court finds Plaintiff's motion to amend the complaint is the result of undue delay. The resultant undue prejudice to Defendant requires that it be denied. *Id.*; *Foman*, 371 U.S. at 182.

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its

---

[5] Nor are the cases Plaintiff cites availing. Plaintiff cites *Jones v. Unum Life Ins. Co.*, No. 06-CV-00547, 2006 WL 3462130 (E.D. Ark. Nov. 29, 2006), as an example of a case where "[p]laintiff was allowed to amend her complaint to add a claim for breach of the RSA after the close of discovery and after dispositive motions had been filed." (Pl.'s 12/05/08 Reply at 5.) But the defendant corporation in *Jones*, unlike Defendant here, only argued that the amendment failed to state a claim upon which relief could be grant, not that the amendment was untimely and prejudicial. *Jones*, 2006 WL 3462130 at *3. None of the other cases Plaintiff cites, (Pl.'s 11/13/08 Mot. at 4-6), address the situation where, as here, the motion to amend comes well after both the close of discovery and the deadline for significant motions.

burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration

13

in original)(citation omitted)).  A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

Defendant's motion contends Plaintiff has not, to date, submitted the contractually required proof of loss documents to obtain benefits, and thus Defendant is entitled to summary judgment.  The court agrees.  Plaintiff's insurance policy defines the type of written proof of loss that is required in making a claim:

> [w]ritten proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits . . . We can also require reasonable proof from You of Your:
>
>   a. Prior Earnings; and
>   b. Monthly Earnings for the month for which Disability is claimed.
>
> This may include personal and business tax returns, financial statements, accountant's statements or other proof acceptable to Us.

(Def.'s 10/30/08 Mot., Ex. A at 16.)  In fact, Defendant did request "copies of your business and personal tax returns for 1998 and 1999 with all schedules attached as well as profit and loss statements for the months of January 2000 to the present."  (*Id.*, Ex. H at 1.)  In addition, and because Plaintiff claimed to work as an attorney, Defendant requested "a list of the captions for all court cases you tried within the last 12 months . . . ."  (*Id.*)  Plaintiff admits he never provided any tax returns, profit and loss statements, or captions of court cases.  (Pl.'s 11/19/08 Resp. at 7-8.)  Despite this admission, Plaintiff contends that he did provide sufficient proof of loss, regardless of whether it met

14

the level of compliance Defendant sought.[6] The documents Plaintiff did provide were no doubt useful to Defendant in evaluating the claim, but did not satisfy the list of documents Defendant explicitly sought.

Although admitting that requested proof of loss documents were never provided, Plaintiff defends the lapse on three grounds. First, Plaintiff claims that "to the extent Defendant requested additional information, [Defendant's employee] was advised by Plaintiff . . . to contact his attorney, Andrew J. Kochanowski." (*Id.*) Defendant argues that its employee did make an attempt to contact Kochanowski by telephone, but was unsuccessful, (Def.'s 10/30/08 Mot. at 9), which Plaintiff avers is "not believable." (Pl.'s 11/19/08 Resp. at 6.) But Plaintiff himself, in his sworn deposition, stated that the blame for Kochanowski's unresponsiveness laid with Kochanowski.[7] Further, Plaintiff's

---

[6] Plaintiff, at more than one point in his Response, details the list of documents provided to Defendant. In none of these lists, however, does he claim he submitted the type of financial data contemplated by the policy and requested by Defendant. (Pl.'s 11/19/08 Resp. at 5, "Plaintiff did submit proof of loss as evidenced by . . . [a] description of Plaintiff's occupation . . . [and] numerous medical reports and office notes attesting to Plaintiff's disability."; *id.* at 6, "Plaintiff did provide to Defendant a full description of his job duties . . ., did provide several reports from his treating doctors, did sign authorizations allowing [Defendant] to obtain medical records from his doctors."; *id.* at 7, "Plaintiff signed numerous authorizations allowing Defendant . . . to obtain medical information . . . from his treating doctors . . . and Plaintiff did provide substantial medical information . . . .")

[7] During Plaintiff's deposition, the following exchange occurred:

A. Yes, because I finally confronted Kochanowski and said, "What's going ?"
Q. And what did he tell you?
A. He said, "I'm sorry. I have no explanation for why I haven't attended to your case."
Q. Did he essentially admit that he really hadn't done anything on your behalf?
A. Yes . . . .

(Def.'s 10/30/08 Mot., Ex. F at 140.)

15

response includes the notes created by Natasha Farland, Defendant's employee who conducted an October 31, 2000 telephone interview with Plaintiff. As Farland recorded, she "reminded the insured that proof of loss is his responsibility and we would put our request in writing to him. If [he] would like to forward this information . . . that was certainly his option." (*Id.*, Ex. I at 1.) Plaintiff was aware of his responsibility to provide the requested proof of loss documents, and cannot now create a genuine issue of material fact by attempting to shift the blame for the non-production to his attorney.

Plaintiff also argues, regarding the requested tax returns, financial data, and list of court captions, that the documents are "not relevant to determine the occupation of Plaintiff at the time he became disabled . . . ." (*Id.* at 7-8, ¶¶ 26, 28, 29.)[8] The policy defines "Total Disability," which Plaintiff claims, (Pl.'s Compl. at 2,) to mean, "that because of Injury or Sickness: a. You are unable to perform the important duties of Your Occupation . . . ." (Def.'s 10/30/08 Mot., Ex. A at 6.) In turn, "Occupation means the occupations in which You are regularly engaged at the time You become Disabled." (*Id.*) Plaintiff submitted a claim for disability benefits, in which he provided details of his occupation. He listed his occupation as including: "Duty: Court Appearances. Hours Spent Each Week: Varies. Description: In the 12 months prior to my disability I appeared in court at least 20 times." (Pl.'s 11/19/08 Resp., Ex. H at 3.) Not surprisingly, Defendant sought to verify that Plaintiff actually appeared in court at least

---

[8] Plaintiff does not support his argument – that his perceived relevance, or lack thereof, of the requested documents impacts his duty to provide them as part of his insurance claim – with any law for the court to consider. Plaintiff merely asserts that he "did submit to [Defendant] substantial documentation to support his claim for disability benefits." (*Id.* at 29.) Substantial compliance does not equal full compliance.

16

twenty times in the prior year, and requested proof of loss documents which would verify Plaintiff's pre-disability occupation.[9] Plaintiff's contention that the documents are irrelevant to the "amount of the monthly disability benefit payable," (*Id.* at 8), or his actual disability, (*id.* at 23) may be true,[10] but it cannot be said that the requested proof of loss documents were irrelevant to confirming the occupation Plaintiff himself provided.[11] Plaintiff does not create a genuine issue of material fact regarding his failure to provide what he contends are "irrelevant" documents.

Finally, Plaintiff's Response argues, in large portion, that the RSA fundamentally changed the nature of the claims process, and under the new regime Plaintiff either met the requirements or was not given sufficient chance to comply. (*Id.* at 1-3, 10-18.) The court need not consider how, if at all, the RSA impacts Plaintiff's proof of loss submission requirements. No breach of the RSA was alleged in Plaintiff's complaint, and, as discussed in detail above, no amendment to add such a claim will be granted now. Defendant has proven, and Plaintiff admits, that a number of documents were

---

[9] It is plausible to conclude that a list of captions would help assure Defendant that Plaintiff actually appeared in court at least twenty times, as he claimed. Financial data would further bolster Plaintiff's position that he was employed as an attorney and appearing in court, if the records reflected income or expenses related to work in the matters. In either case, the requests were listed as possibilities in the policy and were not unreasonable requests for proof of loss.

[10] If Plaintiff were to be totally disabled for his full lifetime, as he contends, the policy includes a fixed monthly benefit of $20,000. (Def.'s Mot, Ex. A at 5.) Further, Plaintiff did provide a variety of documents outlining his disability, which Defendant does not contest. (Pl.'s 11/19/08 Resp., Ex. M.)

[11] Plaintiff wrote a letter to Defendant's employee in which he questioned the relevance of the requested proof of loss documents. (Pl.'s 11/19/08 Resp., Ex. K.) At the same time, however, Plaintiff pledged to "gather the information you requested." (*Id.*) As Plaintiff now admits, he never gathered the information for Defendant.

17

requested as proof of loss that were never provided, much less provided within the ninety days as required in the policy. (Def.'s 10/30/08 Mot., Ex. A at 16, "Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits.")[12] Plaintiff's defense of his non-production is unavailing, and does not put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Therefore, the court will grant Defendant's motion for summary judgment.[13]

### C. Motions in Limine

In granting Defendant's motion for summary judgment, the court resolves all issues outstanding between these two parties. As such, Plaintiff's two motions in limine, seeking to limit certain evidence from being presented to a jury, are now moot.

### III. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's "Motion to Amend his Complaint to Include a Breach of Contract Claim Regarding the Regulatory Settlement Agreement" [Dkt. # 68] is DENIED.

IT IS FURTHER ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 62] is GRANTED.

---

[12] As the Sixth Circuit Court of Appeals noted upon appeal of this court's grant of Defendant's motion to dismiss, "[i]t is true that, if [Plaintiff] failed to submit proof of loss within 90 days of any other period for which he claims benefits, then the court may find that he is entitled to no benefits." *Korn*, 238 F.App'x at 112.

[13] Both parties contest the interpretation of a limitations period in the insurance policy. (Def.'s 10/30/08 Mot. at 16-19; Pl.'s 11/19/08 Resp. at 26-29.) Because the court concludes there is no genuine issue of material fact as to whether Plaintiff provided the required proof of loss documents, the court need not now interpret the limitations period as expressed in the policy.

Finally, IT IS ORDERED that Plaintiff's "First Motion In Limine . . . to Exclude Testimony or Reference to the Amount of the Benefit" [Dkt. # 61] and Plaintiff's "Second Motion In Limine . . . to Exclude Testimony of Experts Beyond Their Expertise" [Dkt. # 63] are DENIED as moot.

                              S/Robert H. Cleland
                              ROBERT H. CLELAND
                              UNITED STATES DISTRICT JUDGE

Dated: December 31, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 31, 2008, by electronic and/or ordinary mail.

                              S/Lisa Wagner
                              Case Manager and Deputy Clerk
                              (313) 234-5522